UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*Plaintiff,*<br><br>v.<br><br>RICKY C. WILLDEN<br><br>*Defendant.* | Case No. 21-cr-423 (RC) |

**DEFENDANT'S SENTENCING MEMORANDUM RESPONSE**

Mr. Willden, through undersigned counsel, hereby submits this response to the Government's Sentencing Memorandum. ECF Dckt. # 38. The Government is sympathetic to Mr. Willden's substance abuse struggles. *Id.*, p. 26. In the Government's eyes, however, there is no link between those issues and his conduct. As was explained in Mr. Willden's Sentencing Memorandum, ECF Dckt. #37, his substance abuse and underlying mental health disorders contributed to his conduct that day and should be considered. *See* 18 U.S.C. § 3553(a)(1). In light of those factors, a sentence of twelve months and one day, followed by a thirteen-month inpatient program is sufficient but not greater than necessary to comply with the purposes of federal sentencing.

    a. <u>Mr. Willden's Conduct on January 6.</u>

At the outset, it bears repeating that Mr. Willden takes responsibility for his conduct. There is no excuse for using a chemical irritant against police officers during a riot. Regarding the specific conduct Mr. Willden and others engaged in, the government encourages the Court to look at several factors in determining the appropriate sentence. ECF Dckt. # 38, p. 25. Some of these factors in fact mitigate Mr. Willden's behavior, especially in comparison to other January 6

1

defendants. First, Mr. Willden was not among the first rioters to arrive at the East Columbus doors. Mr. Willden joined the mob that was already amassed there. Second, Mr. Willden withdrew from the group after using the chemical irritant. At 2:35 p.m., after Mr. Willden deployed the chemical irritant, he walked away from the East Columbus doors. He returned and entered through those doors at approximately 3:02 p.m., after they had been opened by other rioters. Moreover, Mr. Willden did not encourage acts of violence; in fact, he was encouraged by others to commit violent acts. ECF Dckt. # 38, p. 14. Mr. Willden also spent relatively little time in the Rotunda and did not walk around the Capitol building. He did not enter into any offices or attempt to enter the Senate Chamber. Mr. Willden did not break any property or encourage others to break property. Mr. Willden did not commit his acts at the Lower West Terrace tunnel or in the West Plaza, where the violence was particularly intense. Mr. Willden was not chanting for the Vice President to be hung or seeking the death of the Speaker of the House. *See e.g.*, *United States v. Cleveland Meredith*, 1:21-cr-00159 (ABJ).

    b.  <u>Comparison to Other Cases.</u>

The government points to several cases to argue for a high-end guidelines sentence. Of note are the cases of *United States v. Cody Mattice*, 21-cr-00657 (BAH), and *United States v. James Phillip Mault*, 1:21-cr-00657 (BAH). Mr. Mattice and Mr. Mault's conduct was more aggravated than Mr. Willden's. They were continuously violent and encouraged others to be violent. While marching on the capitol, Mr. Mattice and Mr. Mault advertised their plans to lead the riot and be violent. *Mattice*, 1:21-cr-00657 (BAH), Dckt. # 61, p. 10. As the Government indicated in that case:

> During the riot, Mault encouraged police officers to stand aside and allow the rioters to invade the Capitol Building while it was still occupied by Members of Congress. When the vastly outnumbered officers refused to give way, Mault and Mattice led the mob that penetrated the police line in the West Plaza, forcing

2

officers to retreat to the Lower West Terrace. Later, with great personal effort, Mault made his way to the mouth of the Lower West Terrace tunnel and used chemical spray against the police officers who refused to yield to Mault and his confederates. Mault then obtained another canister of pepper spray that he gave to another rioter who used it to attack officers in the tunnel. The officers already had endured more than an hour of violent attacks before Mault assaulted them and helped others assault them. Rather than protecting and defending our nation and its Constitution, Mault used his military training and discipline in service of this violence.

*Mattice et al*, 1:21-cr-00657 (BAH), Dckt. # 61, p. 2.

Mr. Willden's conduct is far more mitigated than that of Mr. Mattice and Mr. Mault. First, Mr. Willden did not lead the charge. He only engaged in his conduct once he saw "the officers struggling with other rioters outside the Columbus doors." ECF Dckt # 38, p. 25. Mr. Mattice spearheaded the assault by breaking down the metal barriers that officers were using to separate themselves from the protestors. Mr. Willden, on the other hand, did not break any barriers. The Government describes Mr. Willden's conduct as premeditated. ECF. Dckt. # 38, p. 25, 26 and 35. His premeditation had a far shorter time horizon than Mr. Mattice and Mr. Mault. Mr. Willden was not planning on storming the Capitol that day. Prior to joining the mob, Mr. Willden was wearing a pass for another January 6 event. He did not travel to DC with the plan to storm the Capitol but was planning on going to an event. *See* Exhibit 1, photo below. Mr. Mault and Mr. Mattice on the other hand advertised their intent to take the Capitol as they were marching towards it. Nonetheless, Mr. Willden's participation in the riot was an aberration, and he understands why he should be held accountable for his actions that day.



All the evidence that the Government has provided suggests that Mr. Willden was acting alone at the time that he committed his assault. Further, unlike Mr. Mattice and Mr. Mault, Mr. Willden's single act was relatively isolated. His violent conduct ceased once he threw the canister. He did not engage in skirmishes or commit multiple assaults.

c. <u>Contextualization of Mr. Willden's Participation.</u>

The Government's memorandum seeks to focus the Court's attention on Mr. Willden's actions on January 6, but places little importance on what brought him to that point. Indeed, the Government sympathizes with Mr. Willden's substance abuse issues and his family history. ECF. Dckt. # 38, p. 26. However, the government believes that "nothing suggests that those circumstances accounted for any of his conduct on January 6." *Id*. To the contrary, Mr. Willden's difficult childhood, his substance abuse and his untreated mental health disorders all played a role in the commission of his offense. *See*, ECF Dckt. #37, Exh. F, p.16 ("[H]is involvement with the Capitol Riots of January 2021, including his offenses on 6 January, are best understood through a prism of Mr. Willden's developmental history, his multiple emotional challenges, and his extensive history of substance abuse.") In other January 6 cases, courts have varied downwards in light of difficult childhoods, the defendant's age, and their substance abuse issues. *See United States v. Nicholas Languerand*, 1:21-CR-00353-JDB (varying downward due

to the defendant's difficult childhood and acknowledgement and regret for violent conduct); *United States v. Matthew Miller*, 1:21-CR-00075-RDM (varying downward due to the defendant's age, intoxication, and "exemplary record" before January 6, 2021). Moreover, Mr. Willden was under the influence at the time that he committed this offense. Again, his intoxication does not excuse his conduct, but it does factor into his mindset that day because it decreased his ability to control his inhibitions. These are all reasons that this Court should consider a variance.

Mr. Willden's childhood, his substance abuse and untreated mental health disorders, and his experience of emotional and financial loss, all made it more likely that Mr. Willden would be present at the Capitol on January 6. Those experiences made it more likely that he would seek control over his life by making associations with political groups—that he would seek the sense of brotherhood and belonging. ECF Dckt. #37, Exh. F. It is true that "being a crowd follower or an uncritical believer in news and conspiracy theories—regardless of how incredible—does not absolve a defendant for engaging in criminal activity[.]" *United States v. Reed*, No. 1:21-cr-204(3) (BAH). However, Mr. Willden was primed to believe the election lie. As a result, he made the choice to go to Washington DC to attend the Stop the Steal rally. As foolish as that decision may have been, it bears acknowledging, that the President of the United States is the person who set these actions into motion. As Judge Mehta recently stated during sentencing in another Capitol riot case, the citizens who participated in the Capitol riot were "called to Washington, DC, by an elected official, prompted to walk to the Capitol by an elected official." *See* https://www.politico.com/news/2021/11/19/donald-trump-fault-january-6-attack-523059 (accessed Aug. 3, 2022) (referring to *United States v. John Lolos*, 1:21-cr-00243 (APM) sentencing held on November 19, 2021). People such as Mr. Willden were "a pawn in the game

played by people who know better." *Id.* "People like [him] were told lies, were told falsehoods, were told the election was stolen when it was not . . . . Regrettably, people like [him] who were told those lies took it to heart. And they are the ones paying the consequences." *Id*.

    d.  <u>Mr. Willden's Potential for Rehabilitation.</u>

The Government argues that Mr. Willden is "unwilling or unable to control his behavior." ECF Dckt. # 38, p. 29. On the contrary, Mr. Willden maintained a clear criminal record for the past four decades. Statistically speaking, Mr. Willden is less likely to re-offend than his younger counter parts. *See*, Laurence Steinberg, *The Influence of Neuroscience on US Supreme Court Decisions About Adolescents' Criminal Culpability*, 14 Nature Reviews Neuroscience 513, 515 & fig.1 (2013) (explaining the "age-crime curve"). To his credit, prior to his incarceration and since his incarceration, Mr. Willden sought to attend a drug rehabilitation program. ECF Dckt. # 23, p. 3. Now he's been admitted to a program that would address the underlying issues that contributed to Mr. Willden's offense conduct. ECF Dckt. #37, Exh. G. Further, his family believes a faith-based rehabilitation would be fruitful. Mr. Willden understands that a prison sentence is warranted in this case but asks that this Court give him an opportunity to address his substance abuse issues in a therapeutic environment so that he can prepare for his life after incarceration.

    e.  <u>Conclusion.</u>

For the reasons set forth herein, and in Mr. Willden's sentencing memorandum, a sentence of 12 months and one day, followed by a mandatory drug rehabilitation program for 13 months, is sufficient but not greater than necessary.

DATED: August 3, 2022                    Respectfully submitted,

                                         HEATHER E. WILLIAMS
                                         Federal Defender

                                         */s/ Griffin Estes*
                                         GRIFFIN ESTES
                                         Assistant Federal Defender
                                         Attorney for Defendant
                                         RICKY C. WILLDEN